Morning. This next case for argument then is United States v. Gowadia. As counsel is well aware, there are classified documents in the case. None of the briefs were filed under seal and we don't expect, based on that, that there would be any classified information that would be alluded to in the argument. Scooter Slade, with whom you're familiar, is here from the United States Department of Justice as a security specialist should any issue arise. But before we begin, I just wanted to put that on the record so we were all clear that we are in an open courtroom and that we want to make sure that neither directly nor indirectly are we referring to any of the classified information. You may proceed. Thank you. May it please the court. Judge Hawkins, Judge McEwen, Judge Bay, Mr. Ostriker, Mr. Sorensen, I'm Georgia McMillan with Harlan Kimura. We represent the appellant Noshir Gowadia. We have withdrawn argument B in the opening brief and argument B in the reply brief. I'd like to focus on our lead issue, the detention 3501C issue, and talk a little bit about the jury instructions. I'm reserving two minutes for rebuttal. We think the record is clear and the law is clear that the district court incorrectly applied 3501C because the court relied on the wrong definition of detention. The court relied on a definition from the Fifth Circuit, a juvenile detention case, which had a very cabined notion of detention. In that case, the USA v. Doe case, detention was defined as institutional confinement or physically restrictive confinement. That was an error because it does not follow Ninth Circuit law. The government does not dispute this error in their answering brief. Because the court, the district court, did not file, excuse me, follow controlling Ninth Circuit law, the Kimwoneka cases and those five factors that set out the scene, action, and circumstances to decide the detention question. The court as well did not step back from that after it had assembled these facts and decide the pivotal question as to whether a reasonable person in Mr. Gowaddy's shoes would have believed he was not free to walk away. And moreover, the court did not step back and ask the final key question under the totality of circumstances, was Mr. Gowaddy detained or in custody? Well, those might be different questions. If we were to say that he was in custody, and then one of the things that follows from that, of course, is if you're in custody, you're required to give the Miranda warnings. And then Miranda warnings were given. The next question then is, if you have the Miranda warnings, if you're assumed to be in custody, we'll just assume that right now for talking purposes, and then you give the Miranda warnings, does that necessarily follow that the presentment time kicks in? Excuse me, the presentment time? That the presentment time kicks in. Well, yes, under 3501C. I think that when you apply that statute, as that statute was the governing statute on the motion to suppress, that statute assumes, in order for 3501C to kick in, you have to have the arrest or some kind of detention. So using your hypothetical judge, let's assume he's under detention, then yes, there is a duty to prompt presentment after six hours have elapsed, and there is no reasonable explanation as to further delay. Doesn't our decision in Indian Boy 10 mean that a Miranda waiver also waives the right to prompt presentment? No, is the answer to that. Those cases... This is so refreshing. You answered the question. I was listening to Judge B before, and I don't want to run afoul of that, but the answer is no. Those cases, the Indian Boy case, as well as the other cases from about the 1970s through the early 80s, none of those cases, Judge, involved, first of all, 3501C analysis. But as well, if we were to follow the government's suggestion, which is and there's a voluntary waiver of Miranda rights, then there has to be a voluntary waiver of prompt presentment. We think that the Supreme Court in Corley has addressed that issue. In Corley, the Supreme Court was looking at what happened with the Third Circuit. The Third Circuit kind of applied that voluntary analysis, and it said, look, in that Corley case, the confessions were voluntary, and so they're in. The Supreme Court in Corley said, wait a second, if you say that voluntary Miranda...waiver of Miranda equates to waiver of prompt presentment, then that means that the language in 3501C has no bearing. It doesn't mean anything, and that runs afoul of basic statutory canons that say that you give meaning to all the terms in the statute. So we don't think that the Court should follow the Indian boy line of cases at all. When we look at the factors concerning detention, we implore the Court to consider the degree of pressure applied on Mr. Gawadia. Truly, this was an absolutely unique case. No other precedent in any of the federal circuits comes close to the nine days of interrogation, every day involving interrogation sessions that went on from six to seven hours, except for the first day, where it was just under six hours. Concerning the degree of pressure... Ms. McMillan, at what point in these nine days was the government compelled to charge Mr. Gawadia and have him have a summons or subpoena or arrest warrant issued and taken before magistrates? Well, the government is not compelled to take a person before a magistrate. Well, if they're not compelled to take him before a magistrate and arrest him, then does 3501A even apply? Not in this case. If he's not arrested, he can't be charged. Yes. Right? Yes, we agree with that. So at what point in the detention process do you claim the government was required to charge him so that he'd be informed of his charges and given his warnings? Well, Judge, I don't think that we argue that the government was specifically compelled or required under law to arrest him at any specific point. If the government's not required to arrest, then how can they present him? If he's under detention as opposed to arrest, how can he be charged when he's only under detention? And doesn't 5A apply only to arrests? 5A does only apply to arrests. We make that argument, and to defendants. But he also said, and I think agreed appropriately, that once he was arrested, he was timely presented, correct? Yes, once he was arrested. But we go back to, I hope I'm answering or beginning to answer your question, Judge. We look at the terms of 3501C, which don't only speak of arrest, but they speak of the detention or some other kind of custody. And that section immunizes inculpatory statements, confessions, and the like, within that six hours. And our argument is that these very damaging statements from our client occurred long after those six hours, and that there is no reasonable explanation for not taking our client to the magistrate. I'm trying to figure out what would happen in front of the magistrate if they had done as you suggest should have been done. Mr. Magistrate or Madam Magistrate Judge, we're here. We're questioning this individual. We haven't made a decision as to whether to arrest him or not, but some of our lawyers suggest we may have some duty to bring him here in front. What does the magistrate judge do? I'm not sure what the magistrate judge would do, but in this case, Judge, the search warrant and the application for the search warrant and the testimony of the lead agents, Thatcher Mahadran and Joe Williams, set forth that there was probable cause to arrest Mr. Gawadia on October 13 when they executed the search warrant at his house. They should have arrested him. What do they need the search warrant for? They should have just waltzed up and arrested him. Well, sure, they should have, but they didn't do that. No, but that's not true. I mean, that would mean you never need a search warrant because you have to have probable cause going to get the search warrant. You're saying, well, you don't even need the search warrant. You could just arrest him. That doesn't make any sense in terms of practical law enforcement. Well, I beg to differ, Judge. I think it makes sense on the record Thatcher Mahadran said there was probable cause to arrest at that point. The investigation in this case had been going on years, going back to 2000. Quite a bit of evidence had been amassed at that point, including copies of documents from – But let's look at it in a practical sense. Often, for example, in a conspiracy or where you're looking for other possible defendants or you're looking for leads, take in the case of a drug case, take it out of national security, there may be probable cause to arrest defendant X on the spot immediately, but they don't because they're looking to see are there other connections. Is there someone in the cycle? And we've never suggested that simply because you have probable cause to arrest somebody at some point that you had some obligation to move forward and then present them to a magistrate. I mean, I just don't know of any case law, but maybe I'm missing something. I don't know of any case law either, Judge. However, in this case, what happened is this prolonged detention in which Mr. Gawadia made very damaging statements. At what point should he have been taken to the magistrate during this prolonged detention, and what would the agents say to the magistrate so that the magistrate could properly inform Mr. Gawadia? For us, Judge, it should have been on October 13. When they were executing the search warrant and they had probable cause to arrest him but decided not to in order to milk him for information. That's right. So they're not allowed to milk him for information. Well, the Supreme Court has said that detaining someone for that express purpose, to milk for information, to seek inculpatory statements, is the epitome of unreasonable delay. You know, they could have arrested him, taken him to the magistrate, and that was so important because then it triggers all of these safeguards for our client. What you want us to hold is that if there is probable cause to arrest as well as to search, the government is under an obligation immediately to arrest and take before magistrate and charge him. No. No. I couldn't say that. The government is not under an immediate obligation, and I don't know that there's any law that says so, but in this case, that's what should have happened. They had ample probable cause. What principle do you apply to this case? Rule 5. Rule 5A and McNabb-Mallory, which speaks of the prompt presentment and all the protections that go with that. You don't need an arrest for a presentment under 5A, correct? Yes. Yes. But we don't have an arrest. No, we don't have an arrest, but the question, I believe, is if there was an arrest at that time or should they have arrested at that time. We say yes, rather than... What principle do you... What case do you point me to or what authority or what principle that the government was under an obligation to arrest on October 13th? I don't have a case. I don't have a case, but on the record, Judge, if I could just complete my thought, on the record, we know, because the agents testified to this, that there was probable cause at that point to arrest. And, you know, if they're trying to develop their case with the search warrant, you know, that's the government's problem, to develop their case. That's... They don't need the search warrant. I'm sorry, Judge. They don't need the search warrant, apparently, in your view. Well, in our view, they had ample evidence, and their own agent, Mahadrin, said they had probable cause. Do you want to save the remaining time? Oh, goodness, yes. All right, thank you. I'll give you a little extra time, so don't worry. Okay. All right, so why don't we hear from the government. Okay, thank you. We'll give you two minutes for rebuttal. May it please the Court. I'm Stephen A. Schreger on behalf of the United States, and with me at council table is Ken Sorensen, who is the lead trial prosecutor in this case. I think Mr. Guadagno's position requires this Court to consider Section 3501C as completely independent of Rule 5, as though it contains some independent presentment requirement that doesn't... that's not triggered solely by arrest, but by some lesser custody or detention. And as Your Honors have pointed out, and I think have elicited from Mr. Guadagno's counsel, there is no legal support for that proposition. In fact, the law is to the contrary. In our 28-J letter, we've cited the McDowell case. We think that's a... it's a very neat summary in that case of how this law works, how these provisions fit together. Rule 5 requires presentment upon arrest. McNabb-Mallory demands suppression where that requirement is violated, and Section 3501C then limits the circumstances under which suppression would be warranted. So Section 3501C is a negative provision. It limits the circumstances under which suppression is warranted. But it can't... And under your interpretation, then, there's no arrest here, but counsel, in effect, argues you have custodial interrogation or you have certainly detention, what would be tantamount to detention. And your position is that you read that section out of any presentment requirement. Well, we have several responses. The first is that we would resist on the facts that there is any detention or custodial interrogation. Right. Because the facts are pretty overwhelming. Well, Section 3501D says specifically there can't be... nothing in Section 3501 shall be construed to require suppression where there is no arrest or other detention. So even if... and so we're not... that provision and Section 3501C are both written in negative terms. So you simply can't... you just can't get to that point in the flow chart. If there's a flow chart about how these provisions work, you can't get to Section 3501C. Alvarez-Sanchez stands for that proposition, and McDowell stands for that proposition. Also, this goes to Judge Bea's question about at what point was the government required to arrest Mr. Gawadia and present him to a magistrate. There was no particular point. The Lovasco case from the Supreme Court that we cited in our brief says there is no due process requirement for the government to arrest upon probable cause. So that's a direct response. When counsel says there is no law supporting that proposition, that's exactly right. And, in fact, there's a Supreme Court case that says the government's not required to. And there are practical reasons for... and there's no... it's easy to lose sight in this case of the fact that Mr. Gawadia was advised of his Miranda rights before every interview and was told he was free to leave. And he was an equal partner in these interviews. So I would resist your question, Judge McEwen, when you say that the facts are overwhelming. I think... I mean, there's a case to be made, but we don't think that case has been made here where Mr. Gawadia stayed in luxury hotels when he was here in Honolulu. He had access... he was told he could access a lawyer. He did have access to a lawyer, in fact. And here in Honolulu, he had a tax lawyer on retainer right down the street from the FBI building. And you'll see that in day 38 of the trial transcript to pages... I think it's 85 to 86. We haven't mentioned that fact in our brief, but I think it is important to point it out. This isn't the classic third-degree black box interrogation. He could have... this was an interview process. In his own statement, you see several points in his statement. Your view is that even though they said, come to Honolulu, we're buying this ticket under this assumed credit card name and we're putting you in this hotel and we're placing these agents outside your door and putting you under surveillance, but don't feel any compulsion. You're free to waltz out of here whenever you want. Is that basically your position? There are a few facts in there I think are overstated. There weren't surveillance agents outside his door. The surveillance agents never went up to his hotel level. And he... certainly he was free to go. It was not a foregone conclusion until... the entire echelon of the Department of Justice. He was free to go. Now, if he tried to make a run for it, the government's hand might have been forced at that point. But that's not what occurred. And if he had said, for example, I'm done, I'm not talking to you anymore, that would have also forced the government's hand, I assume. It may well have, but it was not a foregone conclusion on October 13th for certain that he would be arrested. I mean, the government had to have time to, you know, review the materials that were seized during the search of his house. He didn't start confessing. He didn't start making inculpatory statements until October 14th. Those inculpatory statements didn't relate to all of the charges that ultimately were presented. And this goes also, I think, to Judge Hawkins' question about what would have happened if we did present him to a magistrate judge without any charges. We have no idea. I mean, it's impossible to imagine that scenario. And as counsel pointed out to me at counsel table just earlier, you can't even get on the docket. You can't even get on the magistrate docket without some kind of charges. That's just not the way this system works. So may I just ask you as a question of beyond this case, if we accept your interpretation of how 5C and 3501 fit together. Basically, this process of waiver and chat, waiver and chat, could go on for a year, for example. Would there be anything to, is there any stopping point? I mean, is there any mediating rule? Well, the Supreme Court's decision in the Anderson case suggests that not always does there need to be. I think the court has carved out this extreme, extreme circumstances kind of, you know, sort of carve out. And, you know, at some point, you know, in some case that I can't even really fathom at this moment, I think your hypothetical presses probably the limits, where at some point a mere, even if it's custodial interrogation, that's warned, at some point it ripens into a functional arrest. And there may well be cases to address that in the future if that were ever to occur. We can't imagine under the circumstances under which it would occur. But that is not this case. And especially because of the Miranda warnings, that's not this case. It's interesting, you know, Mr. Gawadia reads Miranda warnings as somehow bad, as somehow that means you're in custody even. We don't think it even means you're in custody. We think the reverse tends to be true. We think that, and the Crawford case stands for this proposition. There the agent started to read the suspect his rights. And the suspect said, oh, I'm under arrest. And the agent said, no, no, no, that's not what I'm getting at. I'm just trying to read you your rights. The whole point of Miranda rights is to level the playing field. And that's what happened here. I mean, Mr. Gawadia goes into each of these interviews knowing that he can cut it off at any point. That was part of the Miranda warning was if you feel like it, you can stop talking at any point. And he does, at least on one or two occasions, say I'm kind of tired, I'm done for today. Exactly, yes. And interestingly, and you'll see this at page 1049 of our record excerpts, he volunteers to the agents on one morning. This is the morning after his very sort of kind of the central confession in this case, where he says, yes, what I did was treason and espionage, and I know what I did was wrong. On that evening after that confession, he writes a note and explains his motivations for the things that he's done. And then the next day he gives that to Agent Williams and says, you know, here, I have something for you. That's not the agents eliciting something from him. That's him presenting information to the agents. And it was very much his MO in this case, actually, that he was really the energy behind a lot of these interviews. The very first day, the agents had to sort of slow him down and say, Mr. Gawadia, we need to read your rights out of an abundance of caution. And he said, no, all right, fine. And actually, you'll see this at page 718 of the government's record excerpts. He says, and this is Agent Williams' testimony, he, Mr. Gawadia, says, I know I'm not under arrest. But then he proceeds to start speaking after they Mirandize him. And he obviously has very particular selfish reasons for why he wants to speak with them, which is that he wants to talk his way out of this. And that's kind of, and at some point his motivation may have changed. He may have tried to be a, you know, may have tried to show his value to the U.S. as an intelligence asset or something to see if he could talk his way out of criminal charges or some such by confessing and cooperating. But, again, he was very much, you know, the government was, of course, interested in what he had to say. But he also had a strong interest in presenting it. And you'll see, too, there are just various statements that he makes. I mean, at page 1048 of his statement, and this is, again, in the government's record excerpts, page 1048, right after he writes down that confession, you know, the key confession of what I did was espionage and treason, right after what he said it was explained to me that I could stop talking any time I wanted, that I could get a lawyer, and that I could leave. So it's not just that the agents were testifying that this occurred. It's that he clearly knew about it. There were a couple of other points I wanted to, I think, going back to the question that Judge Hawkins asked about what would happen, you know, if someone were presented to magistrates where there were no charges. I mean, that's not just a problem in any single case. It becomes a problem in every case because Mr. Gowady, in his reply brief, says, well, you know, there's this six-hour safe harbor of Section 3501C, and that'll just solve all these policy problems that the government has raised. That's simply not true because the government, in this case, is the poster child for this principle. The government just doesn't know, and agents just don't know where the interview may turn. So, you know, if any agent worth his salt is going to say, well, maybe at some point, six hours from now this suspect will still be telling us something useful, I guess that means that right now we better, you know, in an abundance of caution, we better just take him to the magistrate right now. So magistrates are going to be getting calls at all hours of the night, you know, There's nothing for you to say, Mr. Magistrate or Madam Magistrate, other than you could read them the same rights that we've already read them, but there are no charges, so you can't read them any charges. And I think that's also the basis for the rule in the Indian boy case, and all the cases that, I wouldn't say they follow it because they're from other circuits, but all the cases that accord with it. And there are many of those. Mr. Gowady says there's no legal support for this argument. There's plenty of legal support for the argument. There are cases. Two or three other circuits have at least. The Barlow case from the Sixth Circuit, O'Neill from the Fifth Circuit, Poole from the D.C. Circuit, that was the case that came closest to really providing a fulsome sort of analysis of why this is a sensible rule. It's a sensible rule in cases especially like this one, that waiver of Miranda rights is waiver of presentment rights. It's especially sensible in a case like this because there was no arrest, so there was nothing more for the magistrate to have done on top of what the agents already did. Counsel, how do we handle the Corley case? The Corley case in the respect of what does it mean for the Indian boy principle? Yes. Just particularly where it says, you know, if you delay it, you can't delay interrogation just because that's the epitome of unnecessary delay. It's the epitome of unnecessary delay after an arrest. But Rule 5, the whole point of Rule 5 is to set that as a bright line rule. And Mr. Gawadia's rule isn't workable for some of the reasons I've mentioned, which is it's not a bright line rule. In this case, the agents read Mr. Gawadia, his Miranda rights, out of an abundance of caution, not because they thought he was in custody, they had told him he was not, but because they just don't know what a court might later do, so they have to be absolutely careful to read him his Miranda rights. That then becomes the standard too for, under Mr. Gawadia's rule, that then becomes the standard too for presentment. That's not what Corley was getting at. Corley was getting at after an arrest, it's the epitome of delay. Let's assume that he was in custody. But, of course, the Miranda rights were read. So if we assume at least some of these later interrogations were in custody, would that change your argument at all? I'm sorry. I think I just lost the thread. If we were to assume, let's say he's not in custody when he's getting searched because you can hold him while you're looking at his premises. Well, let's assume at some later date in this series of interrogations, let's say we say he was in custody. Well, we also know he got his Miranda rights. So my question to you, does it matter to your argument whether he was in custody or not? No, it certainly doesn't for the reasons I think Judge Bea was getting at with Mr. Gawadia's counsel, that Rule 5 is the requirement. Arrest is the trigger. But also, even under Mr. Gawadia's rule, there's reason to believe that if there's custody at some point but not at another point, that that can matter, that under the Supreme Court's decision, I think, in Howes v. Fields, and it cites a number of other preexisting cases for sort of the same proposition, is that custody can be broken. And that if a suspect goes back to agents and volunteers information, it doesn't necessarily matter that Miranda warnings aren't administered at that latter point. Now, again, I think it's very dangerous to start talking about overlaying a Miranda analysis on top of Rule 5. Our frontline argument is that Rule 5 is the requirement. Arrest is the trigger. But even under Mr. Gawadia's argument, it may well be the case that even if, for example, if this court were to go so far as, and we think this would be incorrect, for the reasons we've said in our 20HA letter, but even if this court thought he was in custody on October 13 because of Craighead, the interviews thereafter wouldn't necessarily be custodial interrogation because he was warned before those interviews that he was not under arrest, was free to leave. There was no police-dominated atmosphere at the Maui Police Department. There was no police-dominated atmosphere at the FBI interview room. And I see that I'm out of time. Go ahead and finish. So I think those latter stages, if this court were really to engage in that analysis of Mr. Gawadia's, which we don't think it should do, there are still ways. And the most incriminating statements come after October 13. So even if the October 13 statement were done, then we would say there is harmless error as to that. I mean, we've conceded in our brief that we can't make a harmlessness claim as to the entire statement. But we certainly could make a harmlessness claim as to the October 13 statement if it came to that, which we don't think it should. Thank you for your argument. Thank you, Your Honors. I'd like to add a few minutes to your clock since we took a lot up with questioning. So if you could put two minutes. Thank you. Thank you. Judge Baye, you ask when should the government charge. Under 3501C, our focus, we're focusing on the evidence and this very damaging confession to our client. And 3501C says that the confession within the first six hours is immunized. Thereafter, you put in the reasonableness test. And in this case, under this record, there is no reasonable reason for delaying, not taking the circle body to a magistrate. So you're saying that on October 13, six hours were used, right? Six hours were used. So it should have been charged on October 16. Yes, everything thereafter should have been suppressed. The government says that Mr. Gowady was free to go, and we just reject that argument. When we go through the setting, action, scene analysis under Kim Wynetka, all of those factors clearly point to someone who is in a police-dominated environment. During each of the nine interrogation sessions and outside of those interrogation sessions, the FBI controlled every aspect of Mr. Gowady's life. They had confiscated not only his business, which we speak of at length in the briefs, but moreover, if the court looks at attachment A to the search warrant, which is in the excerpts of Record Volume 9, it begins on page 32, the court will see that the government had authority to seize all of Mr. Gowady's personal papers, all his financial documents, his checkbook, the keys to his house, all titles to his various property. Now, we don't have record in the actual seizures in inventory is not a part of the lower court record, but that list, attachment A, clearly shows from the government's perspective Mr. Gowady was going nowhere. They had him from that moment on. The government says that in these discussions, Mr. Gowady was an equal party. The court cannot fall straight to that argument. The government had set up next to the interrogation room a monitoring room and had up to five different agents, what the government called certified smart guys, listening to these interrogations and assisting the two lead interrogation agents. That is not an equal conversation when you have people secretly listening to everything you say and feeding questions to the interrogating agents. Ms. McMillan, you've exceeded your time, but you can make a final summary or closing if you have something additional. Our final summary is this, Your Honors. The district court erred in its application. The government does not dispute that using United States v. Doe and that definition of detention was erroneous. From there forward, the district court did not use the correct objective person standard and analyze the situation from Mr. Gowady's situation, and as well, the district court did not apply the totality of the circumstances. That error is an error in legal conclusion. The government does not dispute it. On that error alone, this court should reverse. The government has acknowledged under the harmless error standard that this cannot be considered harmless error. Thank you. Thank you. Thank both counsel, not only for your argument this morning, but also the very excellent briefing. The case of United States v. Gowady is submitted.
judges: Hawkins, McKeown, Bea